UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY EVAN MILSTEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 19-1238-JDT-cgc |
| | ) | |
| JOHNNY ALEXANDER and | ) | |
| TRACY WHITE, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE DEFENDANTS

On October 8, 2019, Plaintiff Jimmy Evan Milstead, who is incarcerated at the Hardin County Jail (Jail) in Savannah, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) The Court issued an order on October 9, 2019, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Hardin County Sheriff Johnny Alexander and Jail Administrator Tracy White.

Milstead alleges he has not been given a razor for shaving while at the Jail. (ECF No. 1 at PageID 2.) Instead, he alleges, the Jail staff passes out a single set of hair clippers for all inmates and does not sterilize them between uses. (*Id.*) He asserts that Sheriff Alexander "is responsible for every inmate in here" and that Administrator White "know[]s

that it's not healt[h]y passing around those bloody hair clippers every Saturday[,] but they still pass them out, spreading infect[iou]s di[sease]s." (*Id.*) Milstead worries that he has been exposed to Hepatitis C from using the clippers. (*Id.*)

Milstead further alleges that "[t]hey do not allow any [B]ible studies or religious material" at the Jail. (*Id.* at PageID 4.) He alleges that his church has mailed him Bible studies, but the Jail has had them returned or put in his property but not given to him. (*Id.*) Milstead alleges that a representative from the "Church of Christ" speaks in the pod every Wednesday night for about twenty minutes, and no other religious service is allowed. (*Id.*) He asserts that the Defendants are "forc[]ing the Church of Christ on every inmate in this Jail." (*Id.*)

Milstead also alleges that there is no law library at the Jail and no law books. (*Id.*) He alleges that he "had and lost a Jury Trial" on September 10, 2019, and now has been unable to "work on [his] appeal or post-conviction" while incarcerated at the Jail. (*Id.*) Milstead also alleges that there are no newspapers "or any kind of new[]s media" at the Jail. (*Id.*) He finally alleges that "[t]hey have opened [his] legal mail" without him present, including a letter from his attorney sent before his trial in September 10, 2019. (*Id.*)

Milstead seeks use of a razor for shaving at while at the Jail, allowance of Bible studies and other religious material, new law books and use of a law library, and an end to the Jail staff opening his legal mail. (*Id.* at PageID 3.) Milstead also wants compensatory damages but only if he has been exposed to Hepatitis C from using the hair clippers. (*Id.*)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint─

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for

failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Milstead filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

To the extent Milstead seeks to sue the Defendants in their official capacities, his claims are treated as claims against their employer, Hardin County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Hardin County may be held liable *only* if Milstead's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is

4

designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Milstead does not allege that he has been deprived of a right because of a Hardin County policy or custom. He instead seeks relief based on the actions of Alexander and White or his general allegations about the Jail. Milstead does not state a claim against Hardin County or against any Defendant in his or her official capacity.

Milstead does not state a claim regarding the hair clippers. He does not allege that any inmate who used the clippers has Hepatitis C or that he has contracted the disease from using the clippers. He alleges only that he fears he may have been exposed to Hepatitis C from using the clippers. Milstead's fear that he might develop a future medical condition does not qualify as a serious medical need. Moreover, the PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see Braswell v. Corr. Corp. of Am.*, 419 F. App'x 522, 626 (6th Cir. 2011).

Milstead also seeks to raise a claim that he has been denied the free exercise of his religion. Though prisoners retain a First Amendment right to the free exercise of their religion, *see O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), "'the circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs.'" *Hayes v. Tennessee*, 424 F. App'x 546, 549 (6th Cir. 2011) (quoting *Walker v. Mintzes*, 771 F.2d

5

920, 929 (6th Cir. 1985)). Milstead alleges that Sheriff Alexander and Administrator White allow religious services to be conducted only by individuals from the Church of Christ and forbid materials from any other religious organization. He alleges that materials his own church has sent to him have been returned or put in his property where he cannot access it. Unless the prison officials have a legitimate penological interest in permitting such restricted religious practice, they may be violating Milstead's First Amendment right to freely exercise his religion. The Court will therefore allow Milstead to proceed on this claim.

Milstead also alleges that the Jail lacks a law library. Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To protect this right, prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. To state a claim that the defendants interfered with his right to access the court, a plaintiff must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

Milstead alleges that, without a law library or law books at the Jail, he has been unable to "work on" an appeal or post-conviction petition. However, Milstead does not allege who is to blame for the lack of a law library. Nor does he allege that he has been unable to pursue a *nonfrivolous* claim in his appeal or post-conviction petition without the

6

law library.[1]  As alleged, Milstead does not state a claim regarding the lack of a law library at the Jail.

Milstead alleges that the Jail does not have newspapers or "any kind of new[]s media."  However, he does not allege that he has been forbidden to have newspapers or access to news media.  The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency."  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle*, 429 U.S. at 103-04.  A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).  That the Jail lacks free newspapers or other news media does not constitute an "extreme deprivation" sufficient to violate the Constitution.

Milstead also asserts that the Jail staff has opened his legal mail.  "[M]ail from an attorney implicates a prisoner's protected legal mail rights" and therefore may not be opened "outside of the prisoner's presence when the prisoner has specifically requested otherwise."  *Sallier v. Brooks*, 343 F.3d 868, 877-78 (6th Cir. 2003).  Allegations that prison officials have improperly opened two or three pieces of legal mail suffices to state a claim under the First Amendment.  *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir.

---

[1] Furthermore, if Milstead still is represented by counsel on direct appeal, his right of access to the Courts is protected with regard to that proceeding.  *See Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991); *Holt v. Pitts*, 702 F. 2d 639, 640 (6th Cir. 1983).

2009) (citing *Sallier*, 343 F.3d at 879-80; *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)).

Milstead, however, alleges that only one piece of his legal mail was opened—a letter from his attorney. He does not allege who opened his mail or whether that person did so intentionally or pursuant to a prison policy or custom. Nor does he allege that he requested mail from his attorney be opened only in his presence.[2] Milstead also does not allege that the opening of the letter from his attorney before his trial in any way affected the trial or his representation. He does not state a claim regarding the opening of the single letter on one occasion. *See Lloyd v. Herrington*, No. 4:11CV-P128-M, 2011 WL 6026661, at *2 (W.D. Ky. Dec. 2, 2011) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2nd Cir. 2003), and *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990), for proposition that an "isolated occurrence of opening one piece of legal mail by prison officials does not rise to a constitutional claim").

In conclusion, the Court DISMISSES Milstead's claims against Sheriff Alexander and Administrator White in their official capacities and the claims against them in their individual capacities, with the exception of his First Amendment free-exercise claim, for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C.

---

[2] The Sixth Circuit has held that it is "not unconstitutional" for a prison to "require prisoners to 'opt in' by requesting in writing that their legal mail be opened in their presence," if they receive written notice of the policy and do not have to name a particular attorney as their counsel. *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992); *see also Sallier*, 343 F.3d at 874.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Milstead's First Amendment free-exercise claim against Alexander and White in their individual capacities shall proceed.

It is ORDERED that the Clerk shall issue process for the Defendants, Hardin County Sheriff Johnny Alexander and Hardin County Jail Administrator Tracy White and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Alexander and White pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Milstead shall serve a copy of every subsequent document he files in this case on the attorneys for Defendants Alexander and White or on Defendants Alexander and White personally if they are unrepresented. Milstead shall make a certificate of service on every document he files. Milstead shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[3]

Milstead is reminded that he must promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

                                              s/ **James D. Todd**
                                              JAMES D. TODD
                                              UNITED STATES DISTRICT JUDGE

---

[3] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.